UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSIE GORATOWSKI,

            Plaintiff,

v.                                                                   Case No. 21-cv-1054-bhl

KILOLO KIJAKAZI, Acting Commissioner for
Social Security Administration,

            Defendant.

## DECISION AND ORDER

      Plaintiff Jessie Goratowski seeks a summary judgment order reversing and remanding the Acting Commissioner of Social Security's decision denying her claim for Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the motion will be granted, in part, and the case will be remanded to the Appeals Council for further consideration.

## PROCEDURAL BACKGROUND

      Goratowski applied for SSI on May 21, 2020. (ECF No. 18 at 7.) Her claim was denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (ECF No. 23 at 2.) That hearing occurred on April 20, 2021. (ECF No. 12-7 at 35.) In a decision dated June 4, 2021, the ALJ found Goratowski "not disabled." (ECF No. 18 at 12.) The Appeals Council denied her request for review, and this action followed. (ECF No. 23 at 3.)

## FACTUAL BACKGROUND

      At the time of her hearing before the ALJ, Goratowski testified that she lived in an apartment with her nine-year-old son. (ECF No. 12-7 at 41.) She stated that her primary issue was back pain, though she also experienced hip pain and anxiety. (*Id.* at 12.) She also reported that she struggled to perform personal care activities and needed to take breaks while doing household chores. (*Id.* at 13.) Ultimately, the ALJ concluded that she had the following severe impairments: "degenerative joint disease of the bilateral hips; disorders of the spine, status post SI joint fusion; obesity; hypertension; and anxiety." (*Id.* at 8.) He also assessed limitations related to her "upper left extremity." (*Id.* at 12.)

**LEGAL STANDARD**

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

**ANALYSIS**

Goratowski argues for remand because: (1) the ALJ failed to build a logical bridge between his finding that she had a moderate limitation in concentration, persistence, and pace and his residual functional capacity (RFC) assessment; (2) the ALJ failed to ensure that the vocational expert's (VE) job-number estimates were the product of a reliable method; (3) the Appeals Council improperly rejected rebuttal evidence that Goratowski provided; and (4) the Commissioner of Social Security holds her position on a constitutionally illicit basis. While the record supports the ALJ's analysis, the Appeals Council's rejection of Goratowski's new evidence was contrary to recent changes in the law. Accordingly, the matter will be remanded to the Council for further consideration on that limited issue.

**I.     The ALJ Built a Logical Bridge Between the Limitations Assessed and the Residual Functional Capacity Determined.**

A claimant's residual functional capacity or RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563

(7th Cir. 2009). "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling 96-8p. In other words, the ALJ must build a "logical bridge" between the evidence of record and the RFC assessed. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

Goratowski argues that the ALJ did not bridge the gap between the evidence and his conclusions because he never accounted for her moderate limitation on concentration, persistence, and pace in his RFC. Defendant responds that the ALJ incorporated that limitation when he restricted Goratowski "to simple, routine and repetitive tasks, with no fast-paced work requirements, involving only simple, work-related decisions and occasional work place changes." (ECF No. 12-7 at 12.) The record confirms Defendant's position.

"In most cases, . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude . . . those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). In fact, the Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures . . . limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). Generally, then, there is no logical connection between a medical opinion that assesses a moderate limitation in concentration, persistence, and pace and an RFC that limits a claimant to simple, repetitive tasks. But not all medical opinions are created equal. In this case, the ALJ found persuasive the opinions of Dr. Catherine Bard and Dr. Lisa Fitzpatrick. (ECF No. 12-7 at 15-16.) Both assessed a moderate limitation in concentration, persistence, and pace, and both specifically elaborated that Goratowski "would be able to sustain [concentration, persistence, and pace] of tasks that are simple and repetitive." (ECF No. 12-9 at 57, 78.) An ALJ may reasonably rely on this kind of explanatory narrative. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Peeters v. Saul*, 975 F.3d 639, 642 (7th Cir. 2020). Put another way, under Seventh Circuit law, an ALJ cannot rationally assume—in the absence of evidence to the contrary—that a restriction to simple, repetitive tasks accounts for a moderate limitation on concentration, persistence, and pace. "Simple" does not mean "engrossing." But when persuasive medical opinions suggest as much, there is nothing illogical about resolving a moderate limitation on concentration, persistence, and pace by confining a claimant to simple, repetitive work. *See Pavlicek*, 994 F.3d at 783. In this case, state agency consultants concluded that Goratowski could work at a consistent pace if limited

to simple, repetitive tasks. The ALJ adopted that limitation in his RFC. The logic is sound, so this Court will not disturb it.

## II. The Vocational Expert's Testimony Established that His Job-Number Estimate was the Product of a Reliable Method.

When a claimant's severe impairments do not presumptively establish a disability but nevertheless preclude the claimant from performing any of her past relevant work, an ALJ turns to a VE to determine whether there exists in the national economy a significant number of jobs that the claimant can perform. 20 C.F.R. § 404.1512. The VE need not literally scour the countryside in search of "Help Wanted" fliers, but he must advance a reasonable approximation of available employment. *See Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). And when a claimant calls into question the reliability of the VE's conclusions, "the ALJ must compel the vocational expert to offer a 'reasoned and principled' explanation of the methodology [he] used to produce the estimate." *Ruenger v. Kijakazi*, 23 F.4th 760, 763 (7th Cir. 2022) (quoting *Chavez*, 895 F.3d at 970). A VE's job-number estimate will survive review if it derives from "a well-accepted methodology" that the VE explains "cogently and thoroughly." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

In this case, the ALJ determined that Goratowski was not presumptively disabled, but because she could not perform any past relevant work, sought a VE's appraisal of what jobs, if any, she could work based on her assessed RFC. (ECF No. 12-7 at 17.) The VE identified several positions, (*Id.* at 52), and based on this, the ALJ found Goratowski "not disabled." But Goratowski worries that the VE's job-number estimates were "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). She contends that the ALJ did not do enough to ensure their reliability. In response, Defendant argues that Goratowski waived her right to challenge the propriety of the VE's estimate, and even if she did not, the VE's testimony establishes the reliability of his method.

"When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *Id.* A claimant, therefore, "waive[s] any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates." *Coyier v. Saul*, 860 F. App'x 426, 427-28 (7th Cir. 2021). "But the claimant does not need to make a formal objection." *Courtney v. Berryhill*, 385 F. Supp. 3d 761, 763-64 (W.D. Wis. 2018). What matters is whether cross-examination provokes "statements that . . . call[] into

question the reliability of the VE's bottom-line conclusions." *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008).

Here, Goratowski's lawyer did ask the VE about her methodology, but his inquiries did not challenge any bottom-line conclusions. He asked only three relevant questions, reproduced below:

> Q . . . [H]ow do you estimate your jobs numbers?
> A  Occupational Employment Quarterly [(OEQ)], and this is the fourth quarter of 2020.
> Q  Okay. And does the [OEQ] utilize what some have called the equal distribution method of estimating jobs numbers?
> A  That's accurate. It's far from a perfect science, but it's the best science we've got and it's the most recognized and most utilized by vocational experts across the U.S.
> Q  And basically what the [OEQ] does is it takes jobs by [S]tandard [O]ccupational [C]lassification [(SOC)] code and divides them by the number of Dictionary of Occupational Titles [(DOT)] codes within the SOC code, correct?
> A  That is correct.

(ECF No. 12-7 at 58.) This brief cross-examination makes the case look a lot like *Coyier v. Saul*, 860 F. App'x 426 (7th Cir. 2021) where the Seventh Circuit held that a claimant had waived her right to challenge the VE's methodology because her counsel did not "ask any questions to reveal shortcomings in the job-number estimates." *Id.* at 428. A general objection to the VE's use of the equal distribution method does not suffice. *Id.* at 427. The Seventh Circuit has often lamented the equal distribution method's "preposterous" assumption that, for instance, if bean counter and financial analyst fall under the same broad classification, there must be an equal number of available jobs in each field. *Alaura v. Colvin*, 797 F.3d 503, 507-08 (7th Cir. 2015). But the Court has never altogether "enjoin[ed] the use of the equal-distribution method." *Coyier*, 860 F. App'x at 428. An ALJ can, therefore, rely on a VE's testimony (even if he employs the much-maligned equal distribution method) so long as that "testimony is uncontradicted (and is otherwise proper)." *Liskowitz v. Astrue*, 559 F.3d 736, 746 (7th Cir. 2009).

While Goratowski's lawyer may have believed that outing the VE as an equal distribution adherent constituted a job well done, the Seventh Circuit requires more. The fact that someone uses the equal distribution method, on its own, is not evidence of a shortcoming or indicative of dubious methodology. *Cf. Overman*, 546 F.3d at 461, 465 (7th Cir. 2008) (holding that the claimant did not waive the right to challenge the VE's testimony because, on cross-examination, counsel "elicited statements that seriously called into question the reliability of the VE's bottom-line conclusions").

Moreover, even if Goratowski did not waive her right to challenge the VE's method, the record contains plenty of indicia of reliability. A VE may establish the reliability of numbers derived from the equal distribution method by, for example, "draw[ing] on his past experience with the equal distribution method, knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the region." *Chavez*, 895 F.3d at 969. The VE in this case did as much. He agreed that he did not "testify to jobs that [he is] not comfortable are based on [his] experience or accurately represented by" the OEQ. (ECF No. 12-7 at 60.) And he affirmatively stated: "I try to utilize certainly areas where I'm more familiar and I have more experience only because I feel it's a much better representative value." (*Id.* at 59.) He also called the equal distribution method "the best science we've got" and "the most recognized and utilized by vocational experts across the U.S." (*Id.* at 58.) *Cf. Brace v. Saul*, 970 F.3d 818, 822 (7th Cir. 2020) (holding that the VE did not establish the reliability of his numbers, in part, because he "never claimed that his method for estimating job numbers [was] a well-accepted one"). The Seventh Circuit has previously deemed similar testimony reliable. *See Bruno v. Saul*, 817 F. App'x 238, 243 (7th Cir. 2020) (contrasting sufficient VE testimony with testimony from *Chavez* where the VE "gave almost no reason at all for choosing one method . . . over another and seemed to lack confidence [in the chosen method]"). Thus, Goratowski's reliability argument also fails on the merits.

**III. The Appeals Council Improperly Rejected Goratowski's Rebuttal Evidence.**

Prior to her appearance in federal court, Goratowski sought redress before the Social Security Appeals Council. (ECF No. 18 at 21.) She submitted 79 pages of additional evidence, including the newly generated opinion of orthopedic surgeon Dr. Phillip Konkel. (*Id.* at 23.) The Appeals Council declined review, stating: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (ECF No. 12-3 at 3.) Goratowski argues this violated 20 C.F.R. Section 416.1470. Defendant believes she has misread the regulation.

This issue takes this case into a swampy area of Social Security appeals law. It has long been the case that federal courts review *de novo* whether the Appeals Council made an error of law in applying its regulations. *See Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). The Appeals Council's discretionary determinations, on the other hand, are not reviewable at all. *See Xiong v. Kijakzai*, No. 20-cv-1493, 2022 WL 124522, at *6 (E.D. Wis. Jan. 13, 2022). The

question here is whether a ruling that the "evidence does not show a reasonable probability that it would change the outcome of the [ALJ's] decision" is a legal conclusion or a discretionary determination.

Recent revisions to Section 416.1470 complicate this inquiry. The previous version of the regulation read, in relevant part:

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Cases the Appeals Council will review, 20 C.F.R. § 416.1470 (2017). This language contemplated a three-step process. At step one, the Council was to evaluate whether the claimant's supplemental evidence was "qualifying," or "new," "material," and "time-relevant." *See Perkins*, 107 F.3d at 1294. If all three conditions were satisfied, the Council moved to step two and considered whether the old evidence plus new submissions tipped the scales such that the ALJ's decision was "contrary to the weight of the evidence." *Id.* Then, only if both inquiries were satisfied, the Council would proceed to a full review of the case at step three. *Id.* In *Stepp v. Colvin*, the Seventh Circuit held that step one involved legal determinations subject to *de novo* federal review, while step two did not. *See Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). Problems arose, though, because the Appeals Council made a habit of denying claimants' requests for review with ambiguous shorthand that did make clear whether the claimant had failed at step one or step two. *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). Not a few plaintiffs arrived in federal court waving "Notices of Appeals Council Action," which explained that the Council had "considered . . . the [claimant's] additional evidence . . . [and] found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* Reviewing courts struggled to decipher the particular step where these rejections occurred. *Id.* Ultimately, the Seventh Circuit held that courts should interpret ambiguous language from the Appeals Council in a manner that permitted *de novo* review. *Id.* ("We thus interpret the Appeals Council decision as stating that it has rejected [the claimant's] new evidence as non-qualifying."). Goratowski asks the Court to follow this approach and read the Appeals Council's decision in the same way.

But the relevant regulation has changed since *Stepp* and *Farrell* were decided. The amended version now reads:

> The Appeals Council will review a case at a party's request or on its own motion if— . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

Cases the Appeals Council will review, 20 C.F.R. § 416.1470 (2020). This iteration omits the "contrary to the weight of the evidence" language, which informed the Appeals Council's step two decision and which "the Seventh Circuit found discretionary and unreviewable." *Xiong*, 2022 WL 124522, at *5. Under the new regulation, step one ostensibly remains the same—the Appeals Council must determine whether the claimant's evidence is "new," "material," and "time-relevant"—but step two requires the Appeals Council to consider whether that evidence would likely change the outcome of the ALJ's decision. This raises the question: Does the form of *Stepp*'s holding (step one is reviewable; step two is not) survive despite the intervening change in language, or is step two now also subject to *de novo* review? Courts in this district are split, but this Court is convinced that the amended step two involves a legal determination fit for federal review.

Confusion pervades virtually every phase of this analysis. As amended, 20 C.F.R. Section 416.1470 requires the Appeals Council to consider "materiality" at step one and whether "there is a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision" at step two. This Court is not the first to point out that the latter is just the Seventh Circuit's long-winded description of the former. *Teresa F. v. Saul*, No. 1:18-cv-01967-JRS-MPB, 2019 WL 2949910, at *9 (S.D. Ind. July 9, 2019). But if both step one and step two involve the same question of materiality, then the amended regulation transforms *Stepp* into a paradox in which district courts have jurisdiction to review materiality determinations at step one but not step two, even though the Council's analysis is identical. *Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. 2019). Thus, any attempt to maintain *Stepp*'s two-step distinction results in absurdity, akin to permitting review of "water" but prohibiting review of "$H_2O$."

Except that the Social Security Administration does not define "materiality" the same way the Seventh Circuit does. According to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual (HALLEX), "material" simply means "relevant to [the claimant's] claim for disability." HALLEX I-3-5-20(C)(4). Pursuant to this definition, evidence can be "material"—the claimant underwent a third surgery on her injured foot—but not reasonably likely to change the outcome of the ALJ's decision if, for instance, the ALJ's RFC already accounts for

any limitations this third surgery might engender. There is, thus, nothing inherently ridiculous about mapping *Stepp*'s holding onto the revised steps one and two.

But *Stepp* itself actually cuts against treating the Appeals Council's determination at the new and improved step two as an unreviewable and discretionary. In *Stepp*, the Seventh Circuit reviewed *de novo* whether the claimant's new evidence created a reasonable probability of a different outcome. *Stepp*, 795 F.3d at 725-26. The Court thought it was reviewing "materiality," but whatever one calls it, the analysis turned on the exact same determination that the Appeals Council now makes at step two. As a result, it is most logical to conclude that the Seventh Circuit would approve *de novo* review in this case, where the Appeals Council declined to hear the case because the claimant's evidence did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision."[1]

Moving to the merits, Goratowski contends that the Appeals Council's rejection of Dr. Konkel's opinion is harmful error because he assessed limitations not reflected in the ALJ's RFC determination. (ECF No. 18 at 23.) Based on the opinion of state agency medical consultant Dr. Elizabeth Weintraub, the ALJ limited Goratowski to "light work . . . involving no more than frequent pushing or pulling with the left upper extremity . . . and to frequent overhead reaching with the left upper extremity." (ECF Nos. 12-7 at 11-12 & 12-9 at 77.) Goratowski developed limitations on her "left upper extremity" (colloquially known as the left arm) after she underwent a series of elbow surgeries between 2017 and 2019. (ECF No. 12-5 at 11.) As part of her analysis, Dr. Weintraub reviewed the records associated with these surgeries. (ECF No. 12-7 at 15.) But she never got the chance to peruse any documents created as part of Goratowski's May 7, 2021 left elbow reconstruction surgery. (ECF No. 12-5 at 15.) Dr. Konkel, the surgeon who performed the left elbow reconstruction, completed a questionnaire on which he indicated that, even 12 months post-op, Goratowski would only be capable of lifting 10 pounds occasionally and less than 10 pounds frequently, pushing and pulling occasionally, and performing overhead work occasionally. (ECF No. 12-7 at 30-31.) This is inconsistent with the ALJ's RFC. Not only did Dr. Konkel assess more stringent limitations in pushing and pulling and overhead reaching, his

---

[1] Several courts in this circuit have held this language ambiguous because it might also reflect a denial based on "materiality" at step one. *See Teresa F.*, 2019 WL 2949910, at *9; *Musonera*, 410 F. Supp. 3d at 1061-62. But the HALLEX resolves any latent ambiguity. If review is denied based on immateriality at step one, the Appeals Council's Notice reads: "This evidence is not material because it is not relevant to your claim for disability. We did not exhibit this evidence." HALLEX I-3-5-20(C)(4). Different language is used when the Council finds that the evidence does not create a reasonable probability of a different outcome. *Id.*

opinion also implicitly restricted Goratowski to *sedentary*, not light, work. *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). In other words, depending on the weight assigned, Dr. Konkel's opinion had the potential to upend the Acting Commissioner's whole decision. "Given the paucity of the evidence before the ALJ relevant to [the elbow] issue and the lack of evidence clearly contradicting the additional evidence offered by [Goratowski] before the Appeals Council, that evidence, if considered by the ALJ, might reasonably have affected his determination." *Nelson v. Bowen*, 855 F.2d 503, 507-08 (7th Cir. 1988). It was therefore error for the Appeals Council to conclude that Goratowski's new evidence did not create a reasonable probability of a different outcome.

## IV. The Removability of the Commissioner of Social Security is Not a Reason for Remand.

Goratowski also argues that the ALJ lacked the authority to adjudicate her claim because any authority he had was derived from the Commissioner of Social Security, who holds office on a constitutionally illicit basis. The parties agree that 42 U.S.C. Section 902(a)(3), which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers principle articulated in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020). (ECF No. 23 at 19.) But even where an unconstitutional removal restriction exists, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021). "[T]he unlawfulness of the removal provision does not strip [an official] of the power to undertake the other responsibilities of [her] office." *Id.* at 1788 n. 23. In other words, to obtain remand on this issue, Goratowski must show that the improper removal restriction actually harmed her. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022). She can make no such showing.

Instead, Goratowski cites *Tafoya v. Kijakazi*, 551 F. Supp. 3d 1054 (D. Col. 2021) for the proposition that the ALJ's determinations are null regardless of what actual harm they inflicted. This, however, is not what *Tafoya* says. In that case, the Court considered only a plaintiff's *standing* to bring the separation of powers constitutional argument. *Id.* at 1059. But in finding standing, it also noted that "[t]he outcome of *Collins* is . . . [in]auspicious for plaintiff's substantive claim" and acknowledged that it "may well be that, even if the removal provisions of the Social Security Act are unconstitutional, the agency's ALJs still had authority to issue disability determinations." *Id.* at 1059 n. 6. This is unsurprising. "Every court that has addressed the merits

of [Goratowski's] constitutional claim has rejected it." *Robinson v. Kijakazi*, No. 21-cv-238-SCD, 2022 WL 443923, at *7 (E.D. Wis. Feb. 14, 2022) (collecting cases). Add this case and this Court to the list. Because Goratowski cannot show compensable harm, remand on this issue is unwarranted.

## CONCLUSION

Because the only error Goratowski identified occurred before the Appeals Council, the Court will remand the case there for further consideration. "The Appeals Council shall then either make a decision on the case in accordance with the Secretary's regulations or remand the case to the ALJ for a recommended decision." *Nelson*, 855 F.2d at 508.

Accordingly,

**IT IS HEREBY ORDERED** that Goratowski's motion for summary judgment, ECF No. 18, is **GRANTED**, **in part**. The case is remanded to the Social Security Appeals Council for further consideration consistent with this decision. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 19, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge